# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Martin C. Ashman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 600 | **DATE** | 11/2/2004 |
| **CASE TITLE** | Cynthia Gandy vs. Jo Anne B. Barnhart | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____ .

(3) ☐ Answer brief to motion due_____ . Reply to answer brief due_____ .

(4) ☐ Ruling/Hearing on _____ set for _____ at _____ .

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .

(7) ☐ Trial[set for/re-set for] on _____ at _____ .

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____ .

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  Enter memorandum opinion and order. The court reverses the Commissioner's final decision and remands this case to the ALJ for further proceedings. The Commissioner's motion for summary judgment [19-1] is denied, and plaintiff's motion for summary judgment is granted to the extent that this court reverses and remands the Commissioner's decision, but denied to the extent that plaintiff seeks a reversal and award of benefits.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | 2 |
| | No notices required. | | number of notices |
| ✓ | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | | NOV 0 3 2004 date docketed |
| | Docketing to mail notices. | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials |
| | Copy to judge/magistrate judge. | | 11/2/2004 date mailed notice |
| IS | courtroom deputy's initials | U.S. DISTRICT COURT 2004 NOV -2 PM 4: 18 Date/time received in central clerk's Office | IS mailing deputy initials |

Document Number

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CYNTHIA GANDY,                          )
                                        )
                Plaintiff,              )      Case No. 04 C 0600
                                        )
        v.                              )      Magistrate Judge
                                        )      Martin C. Ashman
JO ANNE B. BARNHART,                    )
Commissioner of Social Security,        )      DOCKETED
                                        )
                Defendant.              )      NOV 0 3 2004

## MEMORANDUM OPINION AND ORDER

Plaintiff, Cynthia J. Gandy, seeks judicial review of the final decision of Defendant,

Jo Anne B. Barnhart, Commissioner of Social Security ("Commissioner"), who determined that

Plaintiff was not entitled to Disability Insurance Benefits ("DIB"), pursuant to 42 U.S.C.

§ 405(g). Before this Court is Plaintiff's Motion for Summary Judgment, which requests this

Court to reverse the Administrative Law Judge's ("ALJ") decision that Plaintiff was not entitled

to DIB, and reverse and/or remand Plaintiff's case for further determination of her disability. The

Commissioner's Motion for Summary Judgment, which requests this Court to affirm the ALJ's

decision, is also before the Court. For the reasons set forth below, this Court reverses the ALJ's

decision and remands Plaintiff's case for further determination of her disability.


## I.    Procedural History

Plaintiff applied for DIB on June 3, 1999.  (R. at 9, 108.)  Plaintiff claimed that on

September 30, 1998, she became unable to work due to carpal tunnel syndrome, tendonitis of the

left shoulder, and hardening of the arteries. (R. at 9.) Plaintiff's claim was denied initially and upon reconsideration. (R. at 60, 66, 75.) On January 12, 2000, Plaintiff requested an administrative hearing by an ALJ. (R. at 78.) The Administrative hearing was held before ALJ B. Carlton Bailey Jr. on October 30, 2001, where Plaintiff, who was represented by counsel, testified. (R. at 22-57.) At that hearing, the ALJ also received the testimony of Susan Entenberg, a vocational expert. (R. at 52-56.) Additionally, at that hearing, Plaintiff requested that her alleged date of disability onset be amended to June 30, 1999.[1] (R. at 9.) On April 25, 2002, the ALJ rendered his decision and found Plaintiff not disabled because there were a significant number of jobs in the national economy that Plaintiff could perform. (R. at 17.) Plaintiff filed a timely appeal but the Appeal Council denied the request for review, making the ALJ's decision final. (R. at 3.)

## II.   Background Facts

### A.   Plaintiff's Background

Plaintiff was born on January 23, 1955, (R. at 33), and was forty-seven years old at the time of the ALJ's decision. (R. at 10.) Plaintiff completed highschool and one year of college. (R. at 36.) Plaintiff has approximately twenty-two years of secretarial and clerical work experience. (R. at 50.) Plaintiff's most recent employment ended in June of 1999. (R. at 29.)

---

[1] In his April 25, 2002 decision, the ALJ granted Plaintiff's request to amend her alleged date of disability. (R. at 9.)

- 2 -

## B. Medical Facts

Plaintiff was involved in an auto accident in December 1997. (R. at 10-11.) An MRI was performed on Plaintiff's left shoulder on January 13, 1998. (R. at 175.) The MRI revealed mild degenerative changes in the acromioclavicular joint and some abnormalities in the posterior aspect of the belly of the supraspinatus muscle, which may have represented an isolated strain of the supraspinatus muscle. (Id.) The MRI uncovered no evidence of rotator cuff tear. (Id.)

From January 1998 until March 1998, Plaintiff underwent physical therapy treatment for tendonitis of her left shoulder and for neck strain. (R. at 187-93.) Therapy was discontinued due to a lack of further improvement. (R. at 187.)

On April 13, 1999, Plaintiff underwent an Electromyographic ("EMG") consultation of her upper extremities at Christ Hospital and Medical Center. (R. at 172.) That consultation revealed bilateral median neuropathies at the level of both wrists consistent with carpal tunnel syndrome. (Id.) The involvement was very mild and limited to sensory slowing only. (Id.) Additionally, a clinical examination conducted at that time revealed that Plaintiff had left biceps tendonitis within the bicipital groove. (R. at 11, 179.) From January 1998 until May 1999, Plaintiff received physical therapy on her left wrist but full recovery was not achieved. (R. at 181-93.)

In July 1999, Plaintiff underwent surgery for release of carpal tunnel on her left arm. (R. at 194.) A September 8, 1999 check-up by Dr. Jose Perez-Sanz found that Plaintiff was recovering well, though still complaining of pain and tenderness in her left wrist and forearm. (Id.)

- 3 -

In February 2000, Plaintiff underwent nerve conduction studies which disclosed the existence of mild median mononeuropathy at the wrists. (R. at 310.) An EMG test performed in June of 2000 revealed that Plaintiff had mild right median neuropathy at the wrist with mild motor and sensory delay. (Id.) The examining physician also reported that Plaintiff's left carpal tunnel syndrome was nearly resolved, from an electrophysiologic point of view. (Id.)

In October 1999, Plaintiff was hospitalized for testing after reporting to her treating physician, Dr. Zainulabuddin Syed, that she had experienced several episodes involving a loss of balance, blurred vision and slurred speech. (R. at 11.) Testing revealed that Plaintiff had only borderline left ventricle hypertrophy and trace mitral valve regurgitation. (R. at 218.)

Treatment notes from psychologist Dr. Mario M. Gallo reveal that Plaintiff was seeking treatment for generalized anxiety disorder from July 2000 through April 2001. (R. at 234-44.) During her meetings with Dr. Gallo, Plaintiff reported feeling fatigued, depressed and stressed stemming from a variety of physical complaints. (R. at 235-41.) In March of 2002, Plaintiff was noted to be tired, upset and depressed following the death of her mother in December 2001 and her sister in February 2002, and was prescribed the antidepressant medication Zoloft. (R. at 11, 312.)

### C.    Plaintiff's Testimony

Plaintiff testified at the October 30, 2001 hearing. Plaintiff described her professional skills and experience. Plaintiff testified that she completed high school and one year of college. (R. at 36.) Plaintiff claimed that she reads well and has basic math skills. (R. at 36-37.) Plaintiff testified that she worked for C & A Insurance for approximately twenty-one years. (R. at 41.)

- 4 -

Plaintiff performed secretarial and clerical work (writing, filing, and working on computers) at C & A Insurance until she was laid off because of company downsizing. (R. at 41, 52.) Plaintiff's next job was with American Family Insurance where she performed the same kind of secretarial and clerical work as she did at C & A Insurance. (R. at 37.) Plaintiff worked for American Family Insurance for about ten months. (R. at 42) Plaintiff left the American Family Insurance job because of pain in both of her hands and arms. (R. at 38.) Plaintiff testified that she would like to return to work but that she is no longer physically able to perform the kind of clerical work that she knows how to do. (R. at 52.)

Plaintiff described her pain. Plaintiff complained of numbness and stiffness in her right hand. (R. at 38.) Plaintiff also complained of pain in her left palm that shoots up into her forearm. (Id.) Plaintiff explained that the pain in her left arm was worse than it was before her July 1999 carpal tunnel release surgery. (R. at 39.) Plaintiff claimed that she never received any kind of significant relief from that surgery or from the therapy that followed the surgery. (R. at 50-51.) Plaintiff complained of pain in her left shoulder that dates back to a December 31, 1997 auto accident. (R. at 44.) Plaintiff explained that her shoulder had improved, but there was still pain and reduced range of motion. (Id.) And Plaintiff testified that she experiences pain in her legs as well. Plaintiff claimed that she does not go for walks or exercise because she experiences sharp pain shooting through her calves and thighs. (R. at 42-43.) Plaintiff said this pain has been ongoing for a few years. (R. at 43.) Pain also makes it difficult for Plaintiff to perform daily activities like writing, lifting, showering, bathing and vacuuming. (R. at 39.) Plaintiff claims that she can perform light cooking but nothing that involves heavy pots or pans. (R. at 46.) Plaintiff cannot perform yard work and needs assistance with grocery shopping and laundry

washing. (Id.) On a few occasions, Plaintiff dropped items that she was trying to lift or carry because of the numbness in her arms. (R. at 49.)

Plaintiff testified that she suffers from depression that probably began while she was working for C & A Insurance. (R. at 46.) Plaintiff believed that downsizing at C & A Insurance made her depressed. (Id.) Plaintiff complained of memory problems and occasional buzzing sounds in her ear. (R. at 46-47.) Plaintiff testified that she used to be a social person but now she does not enjoy being around people. (R. at 47.) Plaintiff went to approximately twenty psychiatry sessions but she did not think they helped or provided any significant relief. (R. at 47, 51.) Plaintiff's pain medications work occasionally but not always. Plaintiff complains that the medications make her drowsy and do not provide any significant relief. (R. at 48.) Finally, Plaintiff complained of difficulty sleeping. Plaintiff explained that her medications make her tired and cause her to sleep too much during the day. (R. at 44-45.) Because she sleeps during the day Plaintiff cannot fall asleep at night. (R. at 44-45.)


### D.    Vocational Expert's Testimony

Susan Entenberg, a vocational expert ("VE"), was present during Plaintiff's hearing and testified at the hearing. (R. at 22.) The ALJ initially asked the VE several background questions about Plaintiff. (R. at 53.) The VE claimed knowledge of Plaintiff's age, education, past relevant work and transferable skills. (R. at 53.) The VE testified that, with moderate restrictions on her ability to type or do computer or clerical work, Plaintiff could no longer perform her past relevant work. (R. at 53.)

The ALJ presented the VE with hypotheticals to determine if there were jobs in the national economy that Plaintiff could perform. The ALJ first presented the following hypothetical: a claimant with the same age, education and work experience as Plaintiff and:

> "No problems sitting. She can sit six out of eight hours. Standing and walking one hour. Lifting . . . 10 pounds, occasionally, one to two pounds frequently. Carrying the same amount. Moderate restrictions on grasping and fine manipulation. Occasional bending. No squatting, crawling, climbing ropes, ladders, things of that nature. Reaching above shoulder level with the left arm occasionally. No restrictions on the right. No unprotected heights. No being around moving machinery . . . . Moderately limited in the ability to understand and remember detailed instructions. Moderate limitations in the ability to carry out detailed instructions."

(R. at 53-54.) The VE testified that the hypothetical individual would be limited to sedentary, unskilled work, such as telemarketing or some types of cashier work. (R. at 54.) The VE stated that about five thousand such positions exist in the national economy. (Id.) The ALJ then asked the VE if the hypothetical individual could perform work when the individual was moderately limited in the ability to perform activities within a schedule, maintain regular attendance, and be punctual with customary tolerances. (R. at 55.) The VE said her answer would remain the same. (Id.) The ALJ then added moderate limitations in the ability to maintain attention and concentration for extended periods. (Id.) Again, the VE said her answer would remain the same. (Id.) Finally, the ALJ added moderate limitations in the ability to complete a normal workday or workweek without interruptions from psychologically based symptoms and moderate limitations in the ability to perform at a consistent pace without an unreasonable number of rest periods. (Id.) At that point, the VE testified that such an individual could no longer perform sustained employment activity. (Id.) There was no cross-examination of the VE. (Id.)

# III.  ALJ's Findings

The ALJ made the following specific findings:

1.  The claimant meets the nondisability requirements for a period of
    disability and Disability Insurance Benefits set forth in Section
    216(i) of the Social Security Act and is insured for benefits through
    the date of this decision.

2.  The claimant has not engaged in substantial gainful activity since
    the amended alleged onset of disability of June 30, 1999.

3.  The claimant has an impairment or a combination of impairments
    considered "severe" based on the requirements in the Regulations
    20 CFR § 404.1520(b).

4.  These medically determinable impairments do not meet or
    medically equal one of the listed impairments in Appendix 1,
    Subpart P, Regulation No. 4.

5.  The claimant's allegations regarding her limitations are not totally
    credible for the reasons set forth in the body of the decision.

6.  All of the medical opinions in the record regarding the severity of
    the claimant's impairments have been carefully considered (20
    CFR § 404.1527).

7.  The claimant has the residual functional capacity to lift and carry
    1-to-2 pounds at a time, to sit up to 6 hours of an 8-hour workday,
    and to stand or walk up to 2 hours of an 8-hour workday.

8.  The claimant is unable to perform any of her past relevant work (20 CFR § 404.1565).

9.  The claimant is a "younger individual" (20 CFR § 404.1563).

10. The claimant has "more than a high school education" (20 CFR § 404.1564).

11. The claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case (20 CFR § 404.1568).

12. Although the claimant has the residual functional capacity to perform a significant range of sedentary work, she has limited ability to reach, handle, finger, and feel with her left hand, cannot perform postural activities such as balancing, stooping, kneeling, crouching, and crawling, and can only occasionally perform bending activities. Further, the claimant must avoid all exposure to heights and moving machinery, must avoid concentrated exposure to dust, fumes, and other pulmonary irritants, has moderately limited ability to sustain an ordinary routine without special supervision and has moderately limited ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances (20 CFR § 416.967).

13. Although the claimant's limitations do not allow her to perform the full range of sedentary work, using Medical-Vocational Rules

201.21 and 201.28 as a framework for decision-making, there are a significant number of jobs in the national economy that she could perform. Examples of such jobs include work as telemarketer (3,000 jobs) and cashier (2,000 jobs).

14. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 404.1520(f)).

## IV. Discussion

In order to qualify for DIB payments an individual must meet the statutory standard for disability, which requires the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" that has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A). The statute further defines "inability to engage in any substantial gainful activity" as, not only unable to perform Plaintiff's previous work but, unable to engage in "any other kind of substantial gainful work which exists in the national economy . . . ." Id. The determination of disability involves a five-step process that considers both medical and vocational factors. The five steps are:

Step 1: Is the claimant engaged in substantial gainful work activity? If yes, the claimant is not disabled. If no, the inquiry proceeds to step two.

Step 2: Does the claimant have a severe medically determinable physical or mental impairment that interferes with basic work-related activities and is

expected to last at least twelve months? If no, the claimant is not disabled. If yes, the inquiry proceeds to step three.

Step 3: Does the claimant's severe impairment meet or equal the severity of an impairment listed in the appendix of 20 C.F.R. § 404, Subpt. P, App. 1? If no, the claimant is not disabled. If yes, the inquiry proceeds to step four.

Step 4: Can the claimant still perform past relevant work? If yes, the claimant is not disabled. If no, the inquiry proceeds to step five.

Step 5: Can the claimant make an adjustment and perform other work? If yes, the claimant is not disabled. If no, the claimant will be found disabled.

*See* 20 C.F.R. § 404.1520(a)(4)(i-v); *Herron v. Shalala*, 19 F.3d 329, 333 n. 8 (7th Cir. 1994). At the fourth and fifth steps of the five-step inquiry, the ALJ must consider an assessment of Plaintiff's residual functional capacity ("RFC"). The RFC is an assessment based upon all of the relevant evidence of what Plaintiff can still do despite her limitations. 20 C.F.R. § 404.1545(a). In other words, the RFC is the most Plaintiff can do, not the least. Id. The RFC assessment helps to evaluate the types of work available to an individual with particular limitations. Id. The final responsibility for deciding Plaintiff's RFC rests with the ALJ. 20 C.F.R. § 404.1527(f)(2).

Plaintiff bears the burden of proof through step four of the five-step inquiry; the burden shifts to the Commissioner at step five. *Herron*, 19 F.3d at 333 n. 8. Plaintiff's burden of proof includes providing medical evidence substantiating the assertion of disability. 20 C.F.R. § 404.1512(a); *Luna v. Shalala*, 22 F.3d 687, 693 (7th Cir. 1994). If the ALJ determines that Plaintiff is not disabled at any step of the five-step inquiry, the inquiry ends without proceeding to the next step. 20 C.F.R. § 404.1520(a)(4)(i-v). The ALJ weighs the medical and testimonial

evidence presented and, when he denies benefits, he must build a logical bridge from the evidence to his conclusion. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

Section 205(g) of the Social Security Act grants federal courts the authority to review final decisions of the Commissioner with the power to affirm, modify, or reverse, with or without remand to the Commissioner for a rehearing. 42 U.S.C. § 405(g). The scope of this review is limited. This Court may not reweigh evidence, resolve conflicts in the record, decide questions of credibility or substitute our own judgment for that of the Commissioner. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Rather, this Court will affirm the ALJ's decision if it is supported by substantial evidence. *Id.* Evidence is considered substantial if a reasonable person would accept it as adequate to support the ALJ's conclusion. *Id.* Thus, if reasonable minds could disagree on whether Plaintiff is disabled, we must affirm the ALJ's decision denying benefits. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000).

### A.     The ALJ Denied Benefits Based on VE Testimony.

In this case, the ALJ proceeded through all five steps of the five-step inquiry and denied Plaintiff's claim at step five. (R. at 15.) At step five, the burden is on the ALJ to provide evidence that shows the existence of other work that Plaintiff can do consistent with her RFC and vocational profile. *Herron*, 19 F.3d at 333 n. 8. Based on the medical evidence, the ALJ determined that Plaintiff's RFC included moderate limitations on Plaintiff's "ability to sustain an ordinary routine without special supervision and to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances." (R. at 14.) Using the Medical Vocational Guidelines (Grid), 20 C.F.R. § 404, Subpt. P, App. 2, as a framework, the ALJ relied

on VE testimony and concluded that Plaintiff could perform a significant number of jobs in the national economy (namely as telemarketer or cashier) and was therefore not disabled. (R. at 15.)

The parties agree that Plaintiff cannot perform her past relevant work and that the ALJ's RFC determination is supported by the medical evidence contained in the Record. The parties dispute whether the ALJ's determination that Plaintiff can perform other work in the national economy is supported by substantial evidence. Plaintiff argues that, because her RFC includes significant limitations not included in the hypotheticals posed to the VE, the VE did not fully understand Plaintiff's limitations so the VE's testimony is flawed and the ALJ's conclusion, which is based on that testimony, is not supported by substantial evidence. (Pl.'s Br. Summ. J. at 6-7.) The Commissioner argues that, despite differences in the language, the hypotheticals posed to the VE are essentially consistent with Plaintiff's RFC and adequately portray her limitations. (Mot. Summ. J. & Resp. Pl.'s Mot. Summ. J. at 6-7.) Accordingly, the Commissioner argues that the VE's testimony constitutes relevant and substantial evidence upon which the ALJ may base his decision. (Id.)

The ALJ's decision to consult and rely on a VE was appropriate. (Pl.'s Br. Summ. J. at 5-6; Mot. Summ. J. & Resp. Pl.'s Mot. Summ. J. at 6-7.) *See Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) (where nonexertional limitations might substantially reduce a range of work an individual can perform, use of the Grid would be inappropriate and an ALJ must consult a VE). VE testimony may constitute substantial evidence that Plaintiff can perform a significant number of jobs in the national economy. *See Sims v. Barnhart*, 309 F.3d 424, 432 (7th Cir. 2002). In order to testify reliably, the VE must understand the full extent of Plaintiff's disability so that the VE does not declare Plaintiff capable of undertaking work in the national or local

- 13 -

economy that Plaintiff cannot truly perform. *Young*, 362 F.3d at 1003. The ALJ need not include every one of Plaintiff's impairments in his hypothetical question to the VE regarding the jobs Plaintiff could reasonably perform. *Ehrhart v. Sec'y of Health & Human Servs.*, 969 F.2d 534, 540 (7th Cir. 1992). All that is required is that the hypothetical question be supported by the medical evidence in the record. *Id.*; *Meredith v. Bowen*, 833 F.2d 650, 654 (7th Cir. 1987). Furthermore, a showing that the VE reviewed Plaintiff's medical evidence and was present during Plaintiff's administrative hearing testimony supports a finding that the hypothetical question is supported by the medical evidence. *Ragsdale v. Shalala*, 53 F.3d 816, 818 (7th Cir. 1995). However, where a hypothetical question is fundamentally flawed because it is limited to the facts presented in the question, and does not include all of the limitations supported by the medical evidence in the record, the ALJ's decision that Plaintiff can adjust to other work in the economy cannot stand. *Young*, 362 F.3d at 1005.

The VE's testimony was based solely on the hypotheticals posed by the ALJ. Neither party argues that the VE studied Plaintiff's medical records in advance of the administrative hearing. The Record shows only that the VE was present at the hearing and was familiar with Plaintiff's age, education, past relevant work and transferable skills. (R. at 53.) As there is no evidence or argument that the VE examined Plaintiff's medical records or independently learned of Plaintiff's limitations, the Court finds that the VE's testimony was based solely on the hypotheticals posed by the ALJ. Thus, the Court focuses exclusively on the language of the hypotheticals and the language of the RFC to determine if the ALJ provided the VE with enough information to understand the full extent of Plaintiff's disability.

**B.    There are Significant Differences between Plaintiff's RFC and the Hypotheticals Posed to the VE.**

The RFC describes two limitations: (1) moderately limited ability to sustain an ordinary routine without special supervision; and (2) moderately limited ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. (R. at 14.) At Plaintiff's hearing, the VE testified that there were five thousand jobs available for a hypothetical person who is, among other things, "moderately limited in the ability to perform activities within a schedule, maintain regular attendance, and be punctual with customary tolerances." (R. at 55.) Because the VE clearly had knowledge of Plaintiff's second limitation,[2] the issue before the Court is quickly narrowed to whether the VE understood that Plaintiff has a "moderately limited ability to sustain an ordinary routine without special supervision." (R. at 14.)

The hypotheticals posed to the VE at Plaintiff's hearing include: "[s]ome moderately limited in the ability to perform activities within a schedule, maintain regular attendance, and be punctual with customary tolerances," (R. at 55); "[m]oderately limited in the ability to understand and remember detailed instructions" (R. at 54); "[m]oderate limitations in the ability to carry out detailed instructions" (id.); and moderate limitations in "the ability to maintain attention and concentration for extended periods." (R. at 55.) The Commissioner argues that the hypotheticals are generally the equivalent of the RFC and that the hypotheticals alerted the VE to limitations on Plaintiff's ability to sustain an ordinary routine without special supervision. The Commissioner cites Merriam-Webster's Collegiate Dictionary and defines "routine" as "a regular course of

---

[2] The Court treats "punctual within customary tolerances" (from Plaintiff's RFC) and "punctual with customary tolerances" (from the ALJ's hypothetical) as identical.

procedure" or the "habitual or mechanical performance of an established procedure." (Mot. Summ. J. Resp. Pl.'s Mot. Summ J. at 6-7.) According to the Commissioner then, the RFC is slightly redundant because there is significant overlap between limitations on "routine"/"regular course of procedure" and limitations on "maintaining a schedule" and "regular attendance." And the Commissioner also suggests that hypothetical limitations on Plaintiff's ability to understand, remember, and carry out instructions informed the VE that Plaintiff requires special supervision. Thus, the Commissioner concludes that the hypotheticals were "essentially consistent with [the ALJ's] RFC finding and adequately portrayed Plaintiff's limitations." (Mot. Summ. J. Resp. Pl.'s Mot. Summ J. at 7.)

The Court disagrees with the Commissioner's conclusion. As an initial matter, "The ability to sustain an ordinary routine without special supervision," "The ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances," "The ability to maintain attention and concentration for extended periods," and "The ability to carry out detailed instructions" are listed as four separate and distinct mental RFC limitations under the "Sustained Concentration and Persistence" section of the SSA's Mental RFC Assessment form. SSA Mental Residual Functional Capacity Assessment Form, Form SSA-4734-F4-SUP. The SSA expects the ALJ to assess each of these limitations independently and clearly does not consider the limitations interchangeable or redundant. Furthermore, the SSA's decision to list the limitations separately makes sense as the limitations do not mean the same thing. Following the Commissioner's lead, the Court consults Merriam-Webster's Collegiate Dictionary and finds "sustain" to mean "to hold up" or "to bear up under." Merriam-Webster's Collegiate Dictionary 1260 (11th ed. 2003). That dictionary also defines

"ordinary" to mean "of a kind to be expected in the normal order of events." Id. at 873. Thus, moderate limitations on Plaintiff's ability to "sustain an ordinary routine without special supervision" are moderate limitations on Plaintiff's ability to hold up under a normal or regular "routine"/"regular course of procedure" without special supervision. These limitations sweep much more broadly than the hypotheticals posed to the VE, which described difficulty with "detailed" instructions, maintaining concentration for "extended" periods, and performing "activities" within a schedule.

The differences between these limitations are particularly important in the context of employment. The hypotheticals describe an employee who struggles with punctuality, schedules, and detailed instructions. Such an employee may be quite different from an employee who struggles with punctuality, schedules, and detailed instructions and also requires special supervision if she is to hold up under or withstand an ordinary routine. The need for special supervision alone implies that an employer must have an individual on staff whose responsibilities include monitoring Plaintiff on a regular basis. Considering that Plaintiff's RFC is the most she is able to perform, not the least, additional RFC limitations that are taken directly from the "Sustained Concentration and Persistence" section of the SSA's Mental RFC Assessment form and that suggest Plaintiff has difficulty with ordinary daily routines cannot be whitewashed as "essentially consistent" with the hypotheticals posed to the VE.

In *Kasarsky v. Barnhart*, the Seventh Circuit Court of Appeals overturned an ALJ's decision where the hypotheticals posed to a VE included limited exertional abilities and borderline intelligence but failed to include the ALJ's determination that the claimant suffered frequent deficiencies of concentration, persistence, and pace. 335 F.3d 539, 544 (7th Cir. 2003).

The *Kasarsky* Court found that, due to the inaccurate hypothetical, the VE had not fully assessed the claimant's limitations nor the limitations' effect on claimant's prospective job performance. *Id.* The court went on to hold that employers have a right to demand both satisfactory job training and satisfactory job performance and, because the ALJ's RFC determination might negatively affect the types of jobs the claimant could successfully perform, the ALJ was not entitled to rely on the VE's conclusion that the claimant could perform a significant number of jobs in the national economy. *Id.* In the case at bar, as in *Kasarsky*, whether the additional limitations contained in the RFC affect the VE's conclusion that Plaintiff can perform a significant number of jobs in the national economy must be reassessed.

The ALJ denied Plaintiff's claim at step five of his five-step inquiry. At step five the burden is on the ALJ to show that Plaintiff can perform work in the national economy. *Herron*, 19 F.3d at 333 n. 8. In this case, the ALJ relied on the VE's responses to inaccurate hypotheticals when he determined that Plaintiff was not disabled. An ALJ decision based on inaccurate hypotheticals is not based on substantial evidence and remand is required. *Young*, 362 F.3d at 1005; *Kasarsky*, 335 F.3d at 544; *Nesbitt v. Barnhart*, No. 03 C 8308, 2004 WL 2092006, at *7 (N.D. Ill. Sept. 14, 2004). Accordingly, this Court reverses and remands the ALJ's decision for further determination of Plaintiff's disability.

## V.  <u>Conclusion</u>

For the foregoing reasons, the Court reverses the Commissioner's final decision and remands this case to the ALJ for further proceedings consistent with this opinion. The Commissioner's motion for summary judgment is therefore denied, and Plaintiff's motion for

summary judgment is granted to the extent that this Court reverses and remands the

Commissioner's decision, but denied to the extent that Plaintiff seeks a reversal and award of

benefits.

**ENTER ORDER:**

**MARTIN C. ASHMAN**
United States Magistrate Judge

Dated: November 2, 2004.

Copies have been mailed to:

STUART BARASCH, Esq.
757 - 41st Street
Miami Beach, FL  33140


Attorney for Plaintiff

MS. CRISTINE H. KIM
Special Assistant United States Attorney
200 West Adams Street
30th Floor
Chicago, IL  60606

Attorney for Defendant